In the matter of the estate of MARY BERRY, deceased.

[Argued May 15th, 1906. Decided June 18th, 1906.]

A testatrix, by a clause in her will, appointed her son executor, and added that in case he should neglect or decline to qualify and act as executor, her daughter, Jennie, should be executrix thereof. Testatrix died November 25th, 1905, domiciled in Morris county. Her son lived in North Dakota. On December 6th, 1905, a beneficiary under the will applied to the surrogate for probate thereof. On the same day the daughter, Jennie, filed a caveat against the issuance of letters to the son. On December 12th, 1905, the son applied to the surrogate for probate of the will and for letters testamentary. This application was signed by a proctor and verified by the affidavit of the proctor. The contest as to the issuance of letters testamentary, inaugurated by the caveat of the daughter, was

brought to a hearing before the orphans court on February 23d, 1906, when the son appeared, submitted to examination, and insisted that letters testamentary should be issued to him.—*Held*, (1) that the orphans court had correctly concluded that the son had not neglected or declined to qualify as executor; (2) that his application for probate and letters testamentary, signed and verified by his proctor and adopted by him, disclosed his purpose to act as executor; (3) the orphans court permitted caveatrix to present evidence claimed to show that the son should not be given letters testamentary, because he had been guilty of fraud in transactions with his mother, the testatrix. *Quære.* As to the correct practice upon such a charge, and as to whether such a charge, sustained by proof, would justify refusing letters testamentary to the person selected by the deceased.—*Held further*, that the evidence produced was insufficient to support the charge.

On appeal from a decree of the Morris county orphans court.

*Mr. Willard W. Cutler,* for the appellant.

*Mr. Henry C. Pitney, Jr.,* for the respondent.

MAGIE, ORDINARY.

This appeal questions the correctness of an order of the Morris county orphans court, directing the issuance to Abram B. Berry, of letters testamentary upon the estate of his mother, Mary Berry, deceased.

The transcript sent up with the bill discloses that on December 6th, 1905, Ella Angleman, alleging that she was a beneficiary under the will and codicil of Mary Berry, who died November 25th, 1905, presented to the surrogate an application for the probate of said will and codicil, and that on December 12th, 1905, Abram B. Berry, alleging that he is the executor appointed by said will and codicil, presented to the surrogate an application for the probate thereof and the issuing of letters testamentary to him. This application was signed by his proctor and verified by the affidavit of the proctor.

It further appears that, by some proceedings not disclosed by the transcript, the matter was brought to hearing in the orphans court, and that on January 22d, 1906, the court ordered the will and codicil to be admitted to probate, but by the same order, set down for further hearing, a contest which had been raised

respecting the issuing of letters testamentary thereon. That contest was raised upon a caveat which had been filed December 6th, 1905, against the issuing of letters testamentary to Abram B. Berry.

By the sixth clause of the will the testatrix thus provided:

"I nominate and appoint my said son, Abram B. Berry, to be the executor of this my last will and testament, but in case my said son, Abram, shall neglect or decline to qualify and act as executor hereof, it is my will that my said daughter, Jennie Berry, shall be the executrix thereof."

The caveat was filed by Jennie B. Lutes, the Jennie Berry named in that clause.

On February 5th, 1906, which appears to have been the day to which the hearing of that contest was adjourned, Mrs. Lutes presented to the surrogate an application reciting that Abram B. Berry, the executor named in the will, had neglected to qualify and act as such, and praying that letters testamentary on such will and codicil should be granted to her. On a subsequent day the matter thus raised went to hearing, and upon proofs taken in open court the order appealed from was made, on February 24th, 1906.

It is first contended that the issuance of letters testamentary to Abram B. Berry was erroneous, because it was shown that he had neglected to qualify and act as executor, and that therefore Mrs. Lutes, under the provisions of the sixth clause of the will, was entitled to letters testamentary, and he was not.

As testatrix died November 25th, 1905, and as Mrs. Lutes on December 6th, following, filed a caveat against the issuance of letters testamentary to Abram B. Berry, and as it appeared that she and the other parties interested knew that he lived in North Dakota, at a great distance from the domicile of testatrix, his attendance before the court on February 23d, 1906, and submitting to examination, and insisting on the issuance of letters to him, was properly held by the orphans court to show that he had not neglected to qualify as executor.

It is further contended that his neglect was shown because he never made personal application for letters testamentary and that the application signed by his proctor was of no avail.

46

In my judgment this contention cannot be yielded to. The application was in writing, signed by an officer of the court, who represented his client in so doing. It was verified by affidavit, as required by the first rule of the orphans court. Abram B. Berry, when he reached Morris county, adopted and approved it. It sought to obtain letters testamentary on the estate of decedent, and I think it is impossible to maintain that Abram B. Berry neglected to qualify when, under the contest inaugurated by the caveat, he appeared at a day fixed by the court. The order cannot be reversed on this ground.

The transcript shows that the orphans court allowed caveatrix to examine Abram B. Berry and to introduce other evidence, upon which she then contended, and now contends, that he was shown to be an unfit person to be qualified as executor. She claims that it was shown that he had acted fraudulently in some transactions with the testatrix, his mother. If such grounds were proper to be presented to an orphans court, on the question of granting letters testamentary, I think the course of practice was irregular and ought not to have been allowed. Caveatrix ought to have been compelled to file specific charges of fraud, so that the applicant would have been apprised of what he was accused of. No such charge was made in the caveat or in the application of caveatrix.

I do not think it necessary to express any opinion in respect to the jurisdiction of the orphans court to examine into the character and conduct of a person appointed to be executor of his will, by a competent testator, and thereupon to exclude the appointee by denying him letters testamentary. In some states power of this sort has been conferred on probate courts. We have no such legislation. The question thus suggested was not fully argued.

But if it be assumed that the contest over the issuing of letters testamentary to Abram B. Berry was properly before the court on this ground, I think there was no sufficient proof of fraudulent conduct which would justify a rejection of his application for letters testamentary on his mother's appointment.

It appeared, and he admitted, that he procured from his mother the discharge of a mortgage on land of his in North

Dakota without payment. He applied to her for that discharge by a letter which was produced. He therein gave reasons such as a mother might well be influenced by, and induced to discharge the mortgage without discharging the debt. He represented to her that he could make an advantageous sale of the land and use the proceeds for building upon his property a building which he needed in his business. If his statement in that letter, to the effect that he could give her security on other lands, may be inferred to be a promise to do so, his failure to perform that promise would not show fraud, unless such a purpose was in his mind when he asked her to cancel the mortgage. The mortgage exhibited for the same amount, made, not to testatrix, but to her husband, is not connected with the canceled mortgage except by the agreement in the amount secured by each, which may easily be a mere coincidence. That mortgage was upon land to which Abram B. Berry had not yet acquired title from the United States, but it is plain that he had acquired some interest therein, and nothing indicates that it was not an interest that might be mortgaged, or that it was not sufficient security.

But lastly, his evidence, called out by appellant, and which was wholly uncontradicted, shows that he had paid to his mother, the testatrix, all that he owed her. The contention on this ground cannot prevail.

It is strenuously urged that the orphans court improperly excluded evidence upon the contention last dealt with, and it is claimed that, for this, the order should be reversed, and the cause remitted to the orphans court to take further evidence.

An examination of the whole case convinces me that the evidence, excluded at first, was all admitted afterward, and so the caveatrix sustained no injury from its first exclusion.

The order appealed from must be affirmed, and the costs in this court must be imposed upon the appellant.